# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES REGIONAL ECONOMIC DEVELOPMENT AUTHORITY, LLC,<br><br>       Plaintiff,<br>v.<br><br>GERRY D. MATTHEWS and MATTHEWS COMMERCIAL PROPERTIES, LLC,<br><br>       Defendants. | 3:16-cv-01093 (CSH)<br><br><br><br>APRIL 17, 2017 |

## **RULING ON DEFENDANTS' MOTION TO DISMISS**

**HAIGHT, Senior District Judge:**

This case is brought pursuant to the Court's diversity of citizenship subject matter jurisdiction. The Court initially ordered Plaintiff to establish by affidavit the citizenship of each party as of the date Plaintiff commenced the action [Doc. 7]. Plaintiff filed affidavits from which the Court concluded that the Complaint sufficiently and accurately alleged complete diversity of citizenship, so that jurisdiction existed in this Action [Doc. 10].

Defendants now move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted, Doc. 14 ("Defs. Br."). Plaintiff opposes that motion, Doc. 20 ("Pl. Br."). Defendants filed a reply brief, responding to Plaintiff's opposition, Doc. 22 ("Reply Br."). This Ruling resolves Defendants' motion.

## I. INTRODUCTION

On a motion by defendant to dismiss, the Court "must accept as true all of the allegations

1

contained in a complaint," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged in this Plaintiff's Complaint tell a simple if dishonorable tale.

Non-party Joseph Walsh was the managing member of Plaintiff United States Regional Economic Development Authority, LLC ("USREDA"). Defendant Gerry D. Matthews owned and operated Defendant Matthews Commercial Properties LLC ("MCP"), an entity engaged in the brokerage of commercial real estate. Gerry Mathews asked Walsh to wire funds for the purposes of repairing a property in Nantucket, Massachusetts owned by Gerry Matthews's brother Robert V. Matthews and to satisfy real estate taxes on Robert's Nantucket property so that it could be sold. Walsh complied with Gerry Matthews's request. By means of four wire transfers between April 15, 2013 and July 26, 2013, USREDA sent a total of $529,843 to MPC. Defendants did not use the funds for the stated purposes. They have failed and refused to repay any part of the amounts received from Plaintiff.

I accept each of these well-pleaded facts as true, and that the described events occurred. Defendants contend on this motion that notwithstanding the occurrence of those events, Plaintiff has failed to state a legal claim against Defendants, and thus, Defendants owe nothing to Plaintiff. The question presented to the Court is whether Plaintiff has stated any legal claims against Defendants.

## II. FACTUAL BACKGROUND

The facts recounted in this Part are derived from Plaintiff's Complaint, [Doc. 1], and accepted as true on this motion.

From April 15, 2013 through July 26, 2013, Joseph Walsh, the managing member of USREDA, caused a total of $529,843 to be wired to MCP. Doc. 1 ¶ 5. These funds were solicited by Defendants and Robert Matthews "ostensibly for the purpose of repairing property" owned by

Robert Matthews in Nantucket, Massachusetts and "to satisfy outstanding real estate taxes" on the property. *Id.* ¶ 6. The funds were needed to fix the property in order for it to be sold to a buyer in exchange for cash and a yacht. *Id.* Walsh met with Gerry Matthews both at his home and at MCP's offices in Connecticut to discuss the funds. *Id.* ¶ 7. Gerry Matthews represented that both he and MCP were assisting Robert Matthews in the sale of the property, the sale was imminent, and the funds would be repaid in the short-term. *Id.* Gerry Matthews also stated that if the funds from the sale of the house were insufficient, then he would repay any shortfall. *Id.* Based on these representations, USREDA caused the funds to be sent to MCP. *Id.* ¶ 8.

Plaintiff alleges that "[u]pon information and belief" little, if any, of those funds were actually used for the property at issue. Doc. 1 ¶ 9. Instead, MCP and Gerry Matthews used the funds to divert them to, "among other things, cash withdrawals of as much as $19,000 at one time, Gerry's mother Barbara Matthews and payment of a personal Chase Bank credit card account." *Id.* In addition, MCP wired $225,000 to an entity called Bonaventure 22 LLC. *Id.* As of the filing of the Complaint on June 30, 2016, none of the funds have been repaid by Defendants and Defendants have not explained why the funds were not used for the purpose represented to Walsh and USREDA. *Id.* ¶ 10.

Plaintiff requests a judgment against Defendants in the amount of $529,843 with interest from the date the funds were each wired, plus the costs and disbursements of this Action. Doc. 1 at 3. Plaintiff's Complaint does not detail any specific causes of action against Defendants and consists of ten numbered paragraphs. *See id.*

Defendants' Rule 12(b)(6) motion to dismiss the Complaint invokes the phrasing of the Rule, *viz*, "for failure to state a claim upon which relief can be granted." The Notice of Motion spells out

Defendants' theory: They contend that "in its complaint, the plaintiff has failed to plead the necessary elements of any recognized cause of action, including breach of contract, fraudulent misrepresentation and negligent misrepresentation." Doc. 14 at 1.

### III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) requires that "[e]ach allegation must be simple, concise, and direct" and directs that "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). Although a complaint need not provide detailed factual allegations to survive a motion to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(6), a plaintiff must set forth sufficient factual allegations, accepted as true, that "state[s] a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The Court is guided by "'[t]wo working principles'" in applying this standard. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

First, all factual allegations in the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. *See id.* The Court need not credit "legal conclusions" or "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks and alteration omitted). Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted). "Dismissal under Federal Rule

of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (summary order) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

## IV. DISCUSSION

Defendants at bar begin their brief with the blunt indictment that "the plaintiff has completely failed to satisfy the pleading requirement of Rule 8(a)(2)." Defs. Br. at 4. As explained *supra*, Rule 8(a)(2) provides: "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants' motion to dismiss the Complaint presses the contention that the pleading fails to satisfy the notice requirements of Rule 8(a)(2). Their brief lays out that theory in cursory fashion:

> Not only does the Plaintiff's complaint fail to specifically identify any particular cause of action, it also completely fails to set forth the necessary elements of any cognizable cause of action, such as breach of contract, fraudulent misrepresentation or negligent misrepresentation. The allegations of the complaint simply do not provide the Defendants with fair notice of the claims alleged.

Defs. Br. at 4.

One has some difficulty understanding why Plaintiff's Complaint in this Action would not give Defendant Gerry Matthews fair notice of what Plaintiff is claiming from Defendants and why it is doing so. In essence, Plaintiff says that Gerry Matthews asked Plaintiff for significant amounts of money and promised to pay it back, Plaintiff sent the requested money to Gerry Matthews, Gerry Matthews spent it, and refuses to pay Plaintiff back. The Complaint adequately alleges those facts. If these allegations are true—and I am bound to accept on this motion that they are—one wonders how Plaintiff's subsequent lawsuit against Gerry Matthews and his company could have come as a

surprise to Gerry Matthews.

Plaintiff partially responds by stating in its brief, Pl. Br. at 9 n.3, that "at this point in time," Plaintiff presently does not "seek to recover based on a fraud cause of action." Plaintiff apparently has in mind conducting full discovery, and then deciding whether sufficient evidence had been elicited to support a viable claim that Defendants engaged in a scheme to defraud USREDA. Presumably Plaintiff would then move under Rule 15(a) to amend its Complaint to add that claim. The Court expresses no present view as to whether such a motion, if made, would succeed. For present purposes, a potential fraud claim simply drops out of the calculus, and this Ruling is concerned solely with Plaintiff's claims for breach of contract and unjust enrichment.

Defendants assert that Plaintiff's Complaint is also deficient because it does not specify by name any particular cause or causes of action. However, Defendants rely on no specific cases voicing that precise criticism, and the Court's research reveals cases reaching the opposite conclusion. *See, e.g.*, *Sabilia v. Richmond*, No. 11-cv-739, 2011 WL 7091353, at *26 (S.D.N.Y. Oct. 26, 2011) (holding that even though "plaintiffs did not label these allegations as a breach-of-contract claim [this] is not fatal to their pleading, since we must look to the factual allegations of the complaint as defining the nature of the claim rather [than] depend upon the legal labels affixed to those factual allegations" (citing *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 45-46 (2d Cir. 1997)), *adopted by*, 2012 WL 213656 (S.D.N.Y. Jan. 24, 2012). Moreover, the Complaint here is not so "confused, ambiguous, vague, or otherwise unintelligible" to require its outright dismissal. *See Dickinson v. OneWest Bank, FSB*, 3:13-cv-524, 2014 WL 129505, at *2 (D. Conn. Jan. 13, 2014) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks omitted). As such, the Court will not dismiss the Complaint on this basis. Instead, the Court will

address each of Defendants' arguments for Rule 12(b)(6) dismissal of the remaining claims asserted by Plaintiff, based on the factual allegations in the Complaint.

### A. Breach of Contract Claim

Defendants contend that Plaintiff has failed to allege: (1) any offer by Plaintiff or acceptance by Defendants; (2) that there was a meeting of the minds as to the purpose with which the funds were provided; or (3) that any breach occurred. Defs. Br. at 4-7. In addition, Defendants assert that although Plaintiff alleges certain representations were made, there is no allegation that these representations were promises made or conditions placed on any agreement. *Id.* at 6. Defendants contend that because there are no allegations supporting what the agreement was, it necessarily follows that there are also no allegations sufficient to support there was a breach of a contract. *Id.* In particular, Defendants argue that Plaintiff's allegations as to the alleged breach are "mere speculation and conjecture" as they are based only on "information and belief." *Id.* at 7.

Plaintiff responds that the alleged agreement is "clear and obvious" from the allegations in the Complaint: Defendants requested that USREDA lend it funds in connection with a specific property and the funds would be repaid from that property's sale or if there was a shortfall by Gerry Matthews. Pl. Br. at 3. According to Plaintiff, Defendants breached that agreement by failing to repay USREDA, and thereby, damaging USREDA. *Id.*

It is well established that a breach of contract claim, brought pursuant to Connecticut state law, requires proving four elements: (1) formation of an agreement, (2) performance by one party, (3) breach of an agreement by the other party, and (4) damages. *Empower Health LLC v. Providence Health Solutions LLC*, No. 3:10-cv-1163, 2011 WL 2194071, at *4 (D. Conn. June 3, 2011) (quoting *Am. Express Centurion Bank v. Head*, 115 Conn. App. 10, 15-16 (2009)); *see also*

*United Rentals, Inc. v. Price*, 473 F. Supp. 2d 342, 346 (D. Conn. 2007) (citing *Chiulli v. Zola*, 97 Conn. App. 699, 706-07 (2006)).[1]  Here, accepting Plaintiff's allegations as true, Plaintiff has sufficiently pled each of these elements despite Defendants' arguments otherwise.  First, Plaintiff has alleged an agreement was formed whereby USREDA would loan certain funds to Defendants in order to repair a property and satisfy outstanding real estate taxes in order to ready the property for sale.  Defendants would then repay those funds in the short-term based on the sale, or Gerry Matthews would cover any shortfall himself.  Second, USREDA performed under this agreement by wiring certain funds to Defendants.  Third, Defendants breached the agreement by failing to repay the funds and/or failing to properly use the funds pursuant to the agreement.  Finally, USREDA has been damaged because it has not been repaid.[2]

Defendants' arguments as to the lack of allegations regarding each of these elements emphasizes the phrasing used by Plaintiff in its Complaint.  Defendants argue that because Plaintiff says only that the funds were "solicited" by Defendants and Robert Matthews and were "ostensibly" for the purpose of repairing the property, that there was never any offer or exchange made for valuable consideration or allegations supporting that Defendants accepted such an offer. Defs. Br. at 6.  Defendants also assert that the lack of allegations regarding the purpose of the funds requires a conclusion that there was no meeting of the minds on any of the key terms of the alleged contract.

---

[1] Both parties cite to and rely on Connecticut law, therefore, the Court applies Connecticut law to the allegations in Plaintiff's Complaint.

[2] Defendants argue repeatedly that, based on the allegations in the Complaint, it is unclear who the money was even wired to and that it appeared to be wired to Robert Matthews or at least solely for his benefit. The Court disagrees. The only reasonable reading of the Complaint is simply that the money was wired to Defendants, Defendants were assisting Robert Matthews with the property, and Defendants were going to repay Plaintiff. The allegations do not support that the money was actually wired to Robert Matthews.

*Id.* I do not agree. Regardless of the use of the words "solicited" or "ostensibly," it is clear from the allegations in the Complaint, that Plaintiff is alleging it offered Defendants money for a specific purpose and contingent on repayment, Defendants accepted that money, and Defendants did not repay it.[3] On this motion to dismiss, the Court is not only required to accept Plaintiff's allegations as true, but also to draw all reasonable inferences in favor of Plaintiff. *See Harris*, 572 F.3d at 72. Guided by those principles, Plaintiff has sufficiently alleged there was an offer and acceptance and a meeting of the minds on these facts. Ultimately, it may of course be shown that there was in fact no offer or acceptance, and therefore, no contract and/or that there was no agreement as to how to use the funds, but Plaintiff has alleged enough at the pleading stage.

Notably, this case presents different circumstances and allegations than those presented in *Dunne v. Doyle*, No. 3:13-cv-01075, 2014 WL 3735619, at *18 (D. Conn. July 28, 2014), a case cited and relied upon by Defendants. In that case, the plaintiff tried to allege a breach of contract claim based on a contract that was clearly and expressly rejected by the plaintiff and other parties. The very documents relied on by the plaintiff in support of her claim that an agreement was formed demonstrated clearly that no contract was actually formed because there was no clear acceptance of the material terms and no mutuality or meeting of the minds. *Id.* Here, by contrast, Plaintiff has alleged an oral agreement which Plaintiff thereafter performed by lending money Defendants requested. Accepting Plaintiff's allegations as true leads to reaching the opposite conclusion to that reached in *Dunne*—Plaintiff's claim of breach of contract has been adequately alleged.

---

[3] The clearest statement of this comes from paragraph 8 of Plaintiff's Complaint, which states that "[b]ased on the aforesaid representations of Gerry and MCP, USREEDA [sic] caused the Wired Funds to be sent to MCP." Doc. 1 ¶ 8. Defendants then accepted those funds and have not repaid them. *Id.* ¶ 10.

Defendants' argument as to the fact that Plaintiff has not alleged the breach of any agreement similarly fails. Defendants are correct that the Court must be skeptical of allegations based on "information and belief" that do not "make the inference of culpability plausible." *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Salmon v. Blesser*, No. 1:13-cv-1037, 2014 WL 1883552, at *4 (N.D.N.Y. May 12, 2014) *aff'd in part, vacated in part and remanded on other grounds*, 802 F.3d 249 (2d Cir. 2015). However, the *Twombly* plausibility standard clearly "does not prevent a plaintiff from 'pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC*, 604 F.3d at 120 (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)). Plaintiff makes such allegations "upon information and belief" regarding how the funds it wired to Defendants were actually used—facts peculiarly within the possession and control of Defendants. *See* Doc. 1 ¶ 9. Regardless of how Defendants used the money and how much weight is given to such allegations, Plaintiff also alleges that the funds have not been repaid, which would clearly be a breach of the agreement as alleged by Plaintiff. Therefore, Plaintiff's allegations are also sufficient on this element.[4]

### B. Statute of Frauds

Defendants next argue that the Complaint fails to state a breach of contract claim because Plaintiff fails to allege the existence of a written agreement between the parties. Defs. Br. at 7-8.

---

[4] In their briefings, Defendants cite to and rely on a number of cases establishing the elements of a breach of contract claim. Defs. Br. at 4-5; Reply Br. at 3-4. The Court does not disagree that these elements of the claim are ultimately required to be proven by Plaintiff. However, none of these cases, except for *Dunne* discussed *supra*, actually dismissed a complaint for failing to allege the required elements. *See, e.g.*, *Craven v. CBCC Conn. Bldg. Contractors & Consultants*, No. TTDCV095004159, 2011 WL 3587459, at *2 (Conn. Super. Ct. July 20, 2011) (reciting the elements of a breach of contract claim for findings of law after a bench trial).

In consequence, Defendants assert, Plaintiff's claim is barred by Conn. Gen. Stat. Ann. § 52-550 (the "Statute of Frauds"). *Id.*

The Statute of Frauds provides, in relevant part:

> [n]o civil action may be maintained . . . unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; . . . or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars.

Conn. Gen. Stat. Ann. § 52-550(a). Subsection (2) arguably applies to the case at bar, since the facts alleged by Plaintiff could plausibly be interpreted as an agreement by Defendant Gerry Matthews to answer for the debt his brother Robert incurred to Plaintiff. But the question need not be pursued: the funds transferred by Plaintiff, for which repayment is sought by the Complaint, exceeds $50,000, and so the case indisputably falls within subsection (6).

An affirmative defense, such as the Statute of Frauds, may properly be raised by a pre-answer motion to dismiss pursuant to Rule 12(b)(6) so long as the defense appears on the face of the complaint. *Daiei Trading Co., Inc. v. Williams Rice Milling Co.*, 30 F. App'x 13, 14 (2d Cir. 2002) (summary order) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citing *Pani*, 152 F.3d at 74). The potential for the statutory defense appears on the face of the Complaint at bar. Plaintiff does not allege the existence of any written contract, and even after drawing all reasonable inferences in Plaintiff's favor, the sole picture emerging from the wording of the Complaint is that of an oral contract.

Plaintiff ripostes that the Statute of Frauds only applies to oral promises to *make* a loan, not to promises whereby a loan has already been made. Pl. Br. at 5-6. Plaintiff relies solely on *Sarfaty*

*v. PNN Enterps., Inc.*, No. CV020280255, 2007 WL 2317843, at *5 (Conn. Super. Ct. July 24, 2007), which states that "although a civil action may not be brought to enforce an *oral promise to make a loan* over $50,000, oral loans actually made over $50,000 are outside the statute and may be enforced." *Id.* (emphasis in original). In *Sarfaty*, the plaintiff, on behalf of Meridan Associates, brought an action for breach of an oral contract to repay a $1,550,000 loan. *Id.* at *4. The funds were allegedly transferred from Meridan Associates by an individual, Paul Yeh, to PNN Enterprises, the defendant corporation. *Id.* at *2. The court concluded, after trial, that the contract fell outside of the Statute of Frauds because the loans were partially executed even though the contract was not reduced to writing. *Id.* at *5. Defendants offered no evidence to support that the transfers were anything other than a loan. *Id.* at *4. The court relied on the fact that the transfers by Yeh were intended to be loans and that the Statute of Frauds, subsection six, based on its plain meaning, does not apply to partially executed loans. *Id.* at *4-5. The court emphasized the fact that the language in subsection six mirrors the language of a prior subsection four applying to the sale of real property. *Id.* at *5. Given that the courts had consistently excluded partially executed contracts for the sale of real property from the Statute of Frauds, the court in *Sarfaty* concluded that the later added subsection six for loans must also exclude partially executed loans, so that the Statute of Frauds did not apply to them. *Id.*[5]

Although the state court's reasoning in *Sarfaty* may at first glance appear to remove the oral loan at bar from the Statute of Frauds, I am not so persuaded, and neither was Judge Hall, when she

---

[5] The court also relied on certain legislative history in support of this holding. *Id.*

decided *Aruba Hotel Enterprises N.V. v. Belfonti,* 611 F. Supp. 2d 203, 212-13 (D. Conn. 2009).[6] That case arose out of amounts expended to defray hotel renovation expenses. The issue was whether the funds constituted a repayable and enforceable loan, as defendant contended, or a capital contribution, as plaintiff contended. Following cross-motions for summary judgment after full discovery, Judge Hall declined to "read the Statute [of Frauds] as narrowly as the *Sarfaty* court," and rejected a breach of contract claim holding that it was barred by subsection (6) of the Statute: "Here, the MCR transactions, totaling over $2 million, were not reduced to any writing. Thus, the alleged loans cannot be enforced as loans." 611 F. Supp. 2d at 212-213. Judge Hall concluded in *Belfonti* that the Statute of Frauds plainly applies to "any agreement for a loan over $50,000, that has not been reduced to writing" and makes such agreements unenforceable. *Id.* at 212-13.

Judge Hall was disinclined to reach a different result on the authority of *Sarfaty* because the Connecticut Supreme Court, in *Glazer v. Dress Barn, Inc.,* 274 Conn. 33, 69 (2005), "makes it very clear that the payment of money is not evidence of part performance" sufficient to take a case out of the Statute of Frauds. *Belfonti*, 611 F. Supp. 2d at 213. In *Glazer*, the Connecticut Supreme Court stated that "partial or full payment of the purchase price for the sale of land under an oral contract would constitute actual performance of a term of the contract" but "such conduct ' does not take the case out of the statute of frauds.'" 274 Conn. at 68 n.28 (quoting *Breen v. Phelps*, 186 Conn. 86, 94-95 (1982)); *see also Eaton v. Whitaker*, 18 Conn. 222, 229 (1846) (recognizing that courts had abandoned the position that payment of money was an act of part performance because of the

---

[6] Curiously neither party addresses, cites or relies upon *Belfonti* in their briefings before this Court. In addition, since the filing of the briefs in this matter, at least one other Connecticut Superior Court has agreed with the reasoning and holding of *Sarfaty*, see *Zukowski v. Zukowski*, No. FSTCV146023805S, 2017 WL 961172, at *8 (Conn. Super. Ct. Jan. 25, 2017).

difficulty in determining what was meant by the act and the availability of other means to recover the money paid). The court in *Glazer* specifically recognized that such a rule was consistent with the fact that "this court also long has recognized that recovery may be had for money paid or services performed even in the absence of a contract that complies with the statute of frauds on a theory of implied contract." *Glazer*, 274 Conn. at 68 n.28 (citing *Wolfe v. Wallingford Bank & Trust Co.*, 122 Conn. 507, 511 (1937)).

I agree with Judge Hall's analysis of *Sarfaty* in *Belfonti* and do not read the Statute of Frauds so narrowly as to allow for its application only in the case of an oral contract consisting of merely a promise to make a loan.[7] Exceptions to the application of the Statute of Frauds, such as the part performance doctrine, may still bar the Statute's application to loans where the money has been paid. The Connecticut Supreme Court has said that "the doctrine of part performance as related to the statute of frauds is based on estoppel," *Galvin v. Simons*, 128 Conn. 616, 619 (1942), and the elements required for part performance are "(1) statements, acts or omissions that lead a party to act to his detriment in reliance on the contract; (2) knowledge or assent to the party's actions in reliance on the contract; and (3) acts that unmistakably point to the contract." *Glazer,* 274 Conn. at 62. These elements may be satisfied by an infinite variety of circumstances, but it is plain that execution

---

[7] The court in *Sarfaty* did not address *Glazer* and instead concluded that allowing oral loan contracts where money had been loaned to fall under the statute of frauds would "bring the absurd and unjust result of oral loans being transformed into gifts without a writing to the contrary." *Sarfaty*, 2007 WL 2317843, at *5. However, such a concern was in fact addressed by the Connecticut Supreme Court in *Glazer*, which recognized that the party making the loan is not without remedy and may seek a remedy on a theory of implied contract (or similar causes of action such as unjust enrichment and quantum meruit) and avoid the Statute of Frauds altogether. *Glazer*, 274 Conn. at 68 n.28. This further supports the conclusion reached by this Court here and in *Belfonti*.

of an orally promised loan, standing alone, is not sufficient.

In the case at bar, counsel for Plaintiff contend that aspects of the interaction between the parties satisfy the part performance elements articulated in *Glazer*. I am asked to consider that issue on a record limited to the Complaint, before any discovery has taken place. The Complaint's factual allegations are sketchy, but such as they are, I must accept them as true on this motion to dismiss, while at the same time drawing all reasonable inferences in Plaintiff's favor. Having done so, I conclude that Plaintiff's invocation of partial performance as an exception to the Statute of Frauds is sufficiently plausible to survive this Rule 12(b)(6) motion. It follows that Plaintiff's claim for breach of contract survives with it. Whether Plaintiff will be able to prove its case remains for a future day.

### C. Unjust Enrichment Claim

In the alternative, the brief for Plaintiff contends that the complaint sufficiently alleges a claim for unjust enrichment. Plaintiff is clearly correct. Moreover, assuming *arguendo* that for whatever reason Plaintiff has no viable breach of contract claim against either Defendant, that does not preclude an unjust enrichment claim. On the contrary: An unjust enrichment claim is available as a matter of law *only* if there is no enforceable contact between the parties. It is well settled that "[p]roof of a contract enforceable at law precludes the equitable remedy of unjust enrichment." *Feng v. Dart Hill Realty, Inc.*, 26 Conn. App. 380, 383 (1992).

Unjust enrichment is derived from equity, a genesis revealed by the doctrine's broad and salutary characteristics. The Connecticut Appellate Court recently said, in *Hospital of Central Connecticut v. Neurosurgical Associates, PC*, 159 Conn. App. 87, 96-97 (2015):

> A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is

-15-

> contrary to equity and good conscience for one to retain a benefit that has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case in which the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . . Recovery for unjust enrichment is proper if the defendant was benefited, the defendant did not perform in exchange for the benefit and the failure to perform operated to the detriment of the plaintiff.

(citation, internal quotation marks, and alterations omitted). The Connecticut Supreme Court stated the principle somewhat more succinctly in *National CSS, Inc. v. Stamford*, 195 Conn. 587, 597 (1985): "It is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." *Id.* (quoting *Schleicher v. Schleicher*, 120 Conn. 528, 534 (1935)) (internal quotation marks omitted).

The allegations of the Complaint, albeit limited, are sufficient to allege a plausible claim for unjust enrichment on behalf of Plaintiff USREDA against Defendants. To reiterate the core allegations appearing in ¶¶ 5-7 of the Complaint: On one date in April and three dates in July, 2013, Joseph Walsh, the managing member of USREDA, caused separate amounts of USREDA funds to be wired to MCP. These wired transfers amounted to $529,843, a total that was reached with the fourth and final transfer on July 26, 2013. No portion of that considerable amount had been repaid to USREDA by June 30, 2016, the date when USREDA filed the Complaint, and one infers that nothing has been repaid from then until now. According to the Complaint, the wired funds "were solicited by Gerry, MCP and Gerry's brother Robert V. Mathews" from Walsh "ostensibly for the purpose of repairing property owned by Robert in Nantucket, Massachusetts (the 'Nantucket Property') and to satisfy outstanding real estate taxes on the Nantucket Property so that the

Nantucket Property could be sold to a buyer in exchange for cash and a yacht." Doc. 1 ¶ 6. These circumstances were discussed during a number of meetings attended by Walsh at Gerry's home and MCP's offices in Greenwich. Gerry Matthews told Walsh that he and "MCP were assisting Robert in the sale of the Nantucket Property, that the sale was imminent and that accordingly, the funds would be repaid in the short-term. Gerry further stated that if the funds from the sale of the house were insufficient, Gerry would repay any shortfall." *Id.* ¶ 7.

These allegations are followed by ¶ 9 of the Complaint, which recites "on information and belief" that "little if any" of the funds wired from USREDA to MCP were used for Robert Matthews's Nantucket Property; rather, it is claimed that MCP and Gerry Matthews "diverted" the funds to other recipients, including cash withdrawals and to "Gerry's" (and presumably Robert's) mother, Barbara Matthews. On this motion to dismiss, regardless of whether I accept these particular averments as the sort of well-pleaded facts as true, I do accept that in 2013 USREDA wired $529,843 to MCP at Gerry Matthews's request, and nothing has been repaid nearly four years later. The question is whether these core facts give rise to a plausible claim for unjust enrichment.

Defendants' Reply Brief contends that the Complaint's allegations are insufficient "to establish that either of the Defendants was benefitted by the Wired Funds." Reply Brief at 8. Defendants stress that Robert Matthews, not Gerry Matthews, owned the Nantucket Property, and while the complaint alleges Gerry Matthews told Walsh that he and MCP were assisting Robert in that sale, "such allegation does not imply any benefit to either of the Defendants as a result of the transfer of the Wired funds to MCP." *Id*. Nor are Gerry Matthews or MCP shown to be directly concerned with any of the fund diversions described "upon information and belief." *Id.* While the Complaint alleges that Gerry Matthews told Walsh he would repay any "shortfall" from the sale of

the Nantucket Property, Defendants fault the Complaint for not containing "an allegation that MCP agreed to repay any portion of the Wired Funds," or "that the Nantucket Property has been sold or that there is an alleged shortfall." *Id.* at 9.[8]

These contentions by Defendants, while understandable exercises in advocacy, fail entirely to persuade the Court that the factual allegations in this Complaint do not state a viable claim on Plaintiff's behalf for unjust enrichment. The essential element of benefit to the Defendants does not tax the imagination. Defendant Gerry Matthews asked Walsh to cause USREDA to send funds to MCP. MCP is an LLC owned and operated by Gerry Matthews. In the equitable context of unjust enrichment, MCP and Gerry are functional equivalents. USREDA wired $529,843 to MCP. So far as the present record reveals, the money has vanished; USREDA has not been repaid. It is plausible to suppose that these circumstances conferred some sort of benefit upon Gerry Matthews and/or MCP—indeed, it would be wildly implausible to think otherwise.

That benefit need not be measured solely in coin of the realm. Equity and good conscience paint with a broader brush. The case seems to exemplify the power of filial affection and support. We infer from the record that Gerry Matthews wished to help his brother Robert. Helping a brother in need may confer upon the helper a spiritual benefit well within the approving notice of the Chancellor in Equity.

Even if later discovery shows that MCP and Gerry Matthews used the funds received from USREDA for purposes entirely unrelated to Robert Matthews and his Nantucket Property, that does

---

[8] Although it is fanciful to suggest that Gerry Matthews does not know whether Robert has sold his Nantucket Property, Gerry Matthews surely knows that neither MCP, the entity Gerry controls, nor either of the Matthews brothers have repaid the half a million dollars received from USREDA in 2013.

-18-

not preclude an ultimate conclusion that MCP and/or Gerry Matthews benefitted from the USREDA funds. Such a scenario would show only that Gerry Matthews misled Walsh about what Defendants wanted Plaintiff's money for. It certainly does not follow that Defendants did not benefit from their possession of Plaintiff's money, once they had succeeded in separating Plaintiff from it. The particular benefits conferred will emerge in discovery. But the claim is not so implausible as to fail to survive a motion to dismiss.

A more detailed exposition of facts will be revealed as the litigation goes forward. Ultimate burdens of proof will rest upon Plaintiff. However, Defendants are not entitled to a dismissal under Rule 12(b)(6) of Plaintiff's claim for unjust enrichment.

## V. CONCLUSION

For the foregoing reasons, Defendants' [Doc. 14] Motion to Dismiss is DENIED in part and GRANTED in part. Plaintiff has adequately alleged a claim for (1) breach of contract and (2) unjust enrichment. To the extent Plaintiff has attempted to plead any fraud causes of action, including misrepresentation claims, such claims are DISMISSED without prejudice.

Defendants are directed to file their answer to the Complaint on or before May 8, 2017. The parties have filed and briefed several motions regarding an ongoing discovery dispute. The Court will address those motions in a separate Ruling.

**It is SO ORDERED.**

Dated: New Haven, Connecticut
April 17, 2017

/s/ *Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge