UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES REGIONAL ECONOMIC DEVELOPMENT AUTHORITY, LLC, <br><br> Plaintiff, <br> v. <br><br> GERRY D. MATTHEWS and MATTHEWS COMMERCIAL PROPERTIES, LLC, <br><br> Defendants. | 3:16-cv-01093 (CSH) <br><br><br> DECEMBER 4, 2017 |

### RULING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND

**HAIGHT,** Senior District Judge:

This matter is before the Court on a motion of Plaintiff United States Regional Economic Development Authority, LLC ("Plaintiff" or "USREDA") for an order granting leave to file an Amended Complaint. [Doc. 55]. Plaintiff's proposed Amended Complaint would add state common law claims of fraud and aiding and abetting fraud against Defendants Gerry D. Matthews ("Gerry") and Matthews Commercial Properties, LLC ("MCP"), and would also incorporate several non-substantive changes to the Complaint to reflect the current law firm of counsel; to change the heading of Count I; and to correct the abbreviation by which Plaintiff is referred to throughout the Complaint. Defendants have not filed an objection to Plaintiff's motion. This Ruling evaluates the proposed amendments and resolves the instant Motion.

### II. BACKGROUND

Plaintiff brought this action on June 30, 2016, alleging breach of contract and unjust

enrichment. [Doc. 1]. According to Plaintiff's operative Complaint, from April 15, 2013, through July 26, 2013, Joseph Walsh, the managing member of USREDA, caused $529,843 to be wired to MCP through four separate wire transfers. Doc. 1 ¶ 5. The funds were solicited by Gerry and by Robert Matthews ("Robert"), Gerry's brother, "ostensibly for the purpose of repairing property" owned by Robert in Nantucket, Massachusetts, and to satisfy the outstanding property taxes owed on the Nantucket property so that it could be sold. *Id.* ¶ 6. Walsh met with Gerry at Gerry's home and at MCP's offices in Connecticut, where Gerry represented that he and MCP were assisting Robert in the sale of this Nantucket property, the sale was imminent, and the funds would be repaid shortly. *Id.* ¶ 7. MCP, Plaintiff alleges, is owned and operated by Gerry. *Id.* ¶ 3. Gerry also represented that any shortfall in the proceeds from the sale of the house would be repaid by Gerry. *Id.* ¶ 7. Based on these representations, USREDA caused the funds to be sent to MCP. *Id.* ¶ 8. Defendants allegedly did not use the funds for the stated purposes, and have not repaid Plaintiff. *Id.* ¶¶ 9-10.

On July 29, 2016, following a determination by the Court that jurisdiction exists in this matter, Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Complaint for failure to state a claim upon which relief could be granted. This Court denied the motion to dismiss, in part, determining that Plaintiff had alleged plausible claims for breach of contract and, in the alternative, unjust enrichment. *See* Doc. 41.[1]

An Amended Scheduling Order followed, which set the deadline for discovery at October

---

[1]The Court's Ruling noted Plaintiff's representation that it did not, at the time, "seek to recover based on a fraud cause of action." *Id.* at 6. The Ruling continued: "Plaintiff apparently has in mind conducting full discovery, and then deciding whether sufficient evidence had been elicited to support a viable claim that Defendants engaged in a scheme to defraud USREDA. Presumably Plaintiff would then move under Rule 15(a) to amend its Complaint to add that claim." *Id.* The Court then dismissed any claims of fraud, without prejudice to renewal, to the extent Plaintiff had attempted to plead them in the original Complaint.

30, 2017, and the deadline for the filing of dispositive motions, if any, at December 4, 2017. *See* Doc. 49. Just prior to the expiration of the discovery deadline, there was a flurry of motion activity: Defendants moved to quash two non-party subpoenas; Plaintiff moved to compel discovery; and Plaintiff filed the instant motion to amend the Complaint. The discovery motions will be the subject of a separate Ruling; here, the Court will consider only whether to grant Plaintiff leave to file an Amended Complaint, which proposes to add a cause of action for fraud, and a cause of action for aiding and abetting fraud.

## II. STANDARD OF REVIEW

Pre-trial amendment of pleadings is governed by Rule 15(a) of the Federal Rules of Civil Procedure. Except under circumstances inapplicable here, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Defendants have not provided written consent to the proposed amendment; therefore, Plaintiff requires the Court's leave to amend its Complaint.[2]

Rule 15(a) directs the court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court reaffirmed this liberal mandate of Rule 15(a):

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought [to amend] should, as the rules require, be "freely given."

371 U.S. at 182. Thus, a motion to amend a pleading should only be denied upon the demonstration

---

[2] While Defendants did not provide written consent, they also did not file an objection to Plaintiff's motion to amend, and the time to do so has passed. *See* D. Conn. L. Civ. R. 7(a)2. These circumstances do not relieve the Court of its responsibility to determine whether leave should be granted to file the proposed amended complaint.

of one or more of the above factors listed in *Foman*.

### III. PROPOSED FACTUAL ALLEGATIONS

The following new allegations are derived from Plaintiff's proposed Amended Complaint, and are accepted as true for the purposes of this motion.

On or about June 23, 2013, Gerry, and Robert in the presence of Gerry, represented that the solicited funds were not only needed from Plaintiff to ready the Nantucket property for sale, but were also required to compensate Robert's accountants "who were representing Robert on his tax liability owed to the IRS" and to help Robert and Gerry in purchasing property in Waterbury. *Id.* ¶ 12. The Waterbury property was to then be combined with an adjacent property owned by Robert, and sold together to the City of Waterbury for use as a ball park. *Id.* Gerry, and Robert in the presence of Gerry, represented that the sale of this combined property in Waterbury was imminent, as was the sale of the Nantucket property. *Id.* ¶ 13. Accordingly, it was stated that Plaintiff would be repaid from the proceeds of these sales in the short-term. *Id.*

However, at the time that these representations were made, Gerry, "upon information and belief," knew that there was no prospect of any sale of the Nantucket property that would result in proceeds to Robert, due to encumbrances of judgments and mortgages on the property that exceeded the property's value. *Id.* ¶ 15. Gerry's knowledge regarding Robert's finances, and the lack of value of the Nantucket property "can be presumed" based on articles from 2013 detailing Robert's financial state. *Id.* ¶ 16. Gerry and MCP had no intention for the funds to go toward paying Robert's accountants or to purchase the property in Waterbury; instead, the funds were diverted for a variety of purposes, including to Gerry for unrelated purposes. *Id.* ¶ 17-18. "Upon information and belief," when these false representations were made by Gerry and by Robert in Gerry's presence, Gerry was

also aware that there was no prospect of a sale of the property in Nantucket, and that the purchase and sale of the property in Waterbury was not imminent. *Id.* ¶ 19-20.

Thus, at the time these statements were made, Gerry knew that the funds would not be used for the represented purposes and that there would be no sales proceeds available to repay Plaintiff. *Id.* ¶ 21. These representations were made with the intent to "induce reliance thereon by Walsh" who, in turn, relied on these representations in loaning the funds to MCP to Plaintiff's detriment. *Id.* ¶ 24-5. Said funds have not been repaid, nor has any explanation been provided to Plaintiff as to why the funds were not used for their stated purpose. *Id.* ¶ 26.

Further, Gerry was aware that Robert "had creditors seeking substantial funds from him" at the time that Defendants obtained the funds from Plaintiff. *Id.* ¶ 28. During this same time period, or on or before April 2013, Gerry allowed Robert to deposit non-MCP business funds into the MCP savings business account for the purpose of hiding this money from said creditors. *Id.* ¶ 29. Gerry also opened a "Chase Freedom" credit card in his own name for the benefit and use of Robert and Robert's wife, "in order to hide the funds from Robert's creditors." *Id.* ¶ 32. This credit card was never used for Gerry's personal purposes, nor was it used by MCP. *Id.* ¶ 33.

Gerry also previously agreed to assist Robert by "acting in Robert's place as the 99% owner of a real estate development project in Palm Beach Florida," despite having no involvement in the project. *Id.* ¶ 34. He did so because he knew that Robert could not "act for himself" due to the claims of Robert's creditors, and was therefore acting to assist Robert in avoiding his creditors. *Id.* Again, "upon information and belief," when "Gerry or Robert" requested the loan from Plaintiff, Gerry was aware that the funds would not be used for the purposes stated to Plaintiff. *Id.* ¶ 36. Gerry also knew that the sales of the Nantucket and Waterbury properties were not imminent, and knew that neither

he nor Robert would repay the loan. *Id.* ¶ 37-8. "Little, if any" of the funds were used for the represented purposes. *Id.* ¶ 39. Defendants instead caused the wired funds from Plaintiff to be diverted to Gerry, his mother, an entity controlled by Robert's wife, and to pay charges incurred on the Chase Freedom credit card. *Id.* These loaned funds have not been repaid to Plaintiff to date, and no explanation for their use has been provided. *Id.* ¶ 40.

## IV. ANALYSIS

The Court will now consider whether the proposed amendments are the product of undue delay, bad faith, a dilatory motive, or repeated failure to cure deficiencies by amendment. The Court will also consider whether Defendants will suffer undue prejudice should the amendments be permitted to proceed, and will examine the possibility of futility of the proposed amendments.

### A. Prejudice

"[Prejudice to the opposing party resulting from a proposed amendment [is] among the most important reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quotation marks and citation omitted).

> In determining what constitutes "prejudice," [the court] consider[s] whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

*Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (same). "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (collecting cases).

There is no evidence that the proposed amendments would unduly prejudice Defendants. The amendments would not likely require Defendants to spend significant resources beyond those already expended. Dispositive motions have not been filed, and it does not appear that the granting of leave to file an amended complaint would significantly delay the resolution of this matter. It is implausible to suppose that the proposed additions have taken Defendants by surprise, as the prospect of claims sounding in fraud has been raised from the onset of this litigation. Finally, Defendants themselves have not voiced any claim of prejudice. Accordingly, the Court finds no reason to deny leave on this ground.

**B. Undue Delay**

While undue delay in bringing a motion to amend should be considered, "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1983). "The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

In this matter, Plaintiff sought – and was granted – leave to file a motion to amend the pleadings within two weeks following the deposition of Defendants. *See* Doc. 33. The present motion was therefore timely filed; there is no indication of undue delay. Further, the record before the Court does not suggest any evidence of bad faith or dilatory motive on behalf of the Plaintiff, and the Court has already determined that Defendants would not be unduly prejudiced by the proposed amendments. Accordingly, the Court will not deny amendment on this ground.

**C. Futility**

With respect to futility, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (collecting cases). *See also Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) ("[A] motion for leave to amend a complaint may be denied when amendment would be futile." (citation omitted)); *Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied." (citation omitted)).

In considering whether a proposed amendment would be futile, the Court conducts an inquiry that is comparable to the analysis that governs resolution of a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)); *see also Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 249 (D. Conn. Dec. 1, 2014) ("An amendment is considered 'futile' if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." (collecting cases)). Accordingly, Plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and the Court must accept as true all facts alleged in the complaint. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

The Court will examine Plaintiff's proposed amendments to determine whether they meet this standard.

1. *Fraud (Count Two)*[3]

Under Connecticut law, Plaintiff may state a claim for common law fraud by alleging that "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005); *see also Stuart v. Freiburg*, 316 Conn. 809, 821 (2015). "[A] fraudulent representation is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it. This is so because fraudulent misrepresentation is an intentional tort." *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 142 (2010) (quotation marks omitted) (quoting *Kramer v. Petisi*, 285 Conn. 674, 684 n. 9 (2008)).

A plaintiff alleging a claim for fraud in federal court must also comply with Rule 9 of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The particularity requirement of Rule 9(b) serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's

---

[3] Although Plaintiff's motion generally states that Count Two seeks to add a claim of fraud, the Court finds that the proposed allegations more accurately attempt to state a claim for fraud in the inducement, or fraudulent misrepresentation. In Connecticut, the essential elements of a claim for fraudulent misrepresentation and fraud in the inducement are the same as that for fraud, and thus the Court will use the terms interchangeably. *See Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 380 (D. Conn. 2012); *456 Corp. v. United Nat. Foods, Inc.*, No. 3:09-CV-1983, 2011 WL 87292, at *3 (D. Conn. Jan. 11, 2011) (collecting cases).

reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

To satisfy the particularity requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach*, 355 F.3d at 170 (2d Cir. 2004) (quotation marks and citation omitted); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("As to particularity, the 'complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" (quoting *Cosmas v. Hasselt*, 886 F.2d 8, 11 (2d Cir. 1989)).

> Although a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendant(s) had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

*E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, 133 F. Supp. 3d 430, 434 (D. Conn. 2015) (citing *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290-91 (2d Cir. 2006)); *see also O'Brien*, 936 F.2d at 676 ("[W]e have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." (quotation marks and citations omitted)). Thus,

> although 9(b) allows general allegations as to knowledge and intent, such allegations must supply a factual basis for the conclusory allegations by pleading the specific events which they assert give rise to a strong inference that the defendants had knowledge. Similarly, where allegations are based on information and belief the complaint must set forth the source of the information and the reasons for the belief. Thus, conclusory allegations that defendants participated in a scheme to defraud are

insufficient.

*Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 651 F. Supp. 877, 880 (D. Conn. 1986) (internal citations and quotation marks omitted).

In support of the proposed cause of action for fraud, essentially five misrepresentations are alleged: (1) that the wired funds would be used to repair the Nantucket property so that it could be sold; (2) that the wired funds would be used to pay Robert Matthews' accountants; (3) that the wired funds would be used to assist Robert and Gerry in purchasing property in Waterbury that would be, in turn, sold to the City of Waterbury; (4) that the sales of the Nantucket Property and the Waterbury Property were imminent and that Plaintiff would be repaid quickly; and (5) that if the proceeds of the sales of the real property were insufficient, Gerry would repay Plaintiff with the proceeds of sales of other properties he owned in Connecticut with Robert. Plaintiff alleges that these representations were made "with the intent to induce reliance thereon by Walsh in loaning the Wired Funds to MCP upon the belief that the Wired Funds would be used to generate sales of real property which would make available funds to repay Plaintiff in the short term." Doc. 55-1 ¶ 24.

The allegations in the proposed Amended Complaint are insufficient to meet the heightened pleading standard of Rule 9(b). In contravention of Rule 9(b)'s mandate, Plaintiff has not identified the speaker of the misrepresentations with particularity. Throughout the proposed Amended Complaint, the statements that Plaintiff contends were fraudulent were spoken by "Gerry, and Robert in the presence of Gerry", Doc. 55-1 ¶¶ 12, 13, 20; "Gerry and Robert", *id.* ¶ 14; and "Gerry or Robert", *id.* ¶ 36, 37, 38. The grouping together of the purported speakers of the allegedly fraudulent misrepresentations fails to put Defendants on notice of their role in the fraud, if any, and thereby fails to fulfill the purpose behind the requirement for particularized pleading.

Rule 9(b) is not satisfied where the Complaint attributes fraudulent statements to multiple defendants – or in this case, a defendant and a non-party to the lawsuit – without attributing specific statements to each individual. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *In re LightSquared Inc.*, 504 B.R. 321, 356 (Bankr. S.D.N.Y. 2013) ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement." (citation and quotation marks omitted)); *380544 Canada, Inc. v. Aspen Tech., Inc.*, 633 F. Supp. 2d 15, 28 (S.D.N.Y. 2009) ("[B]y attributing the misrepresentations to three defendants, the amended complaint fails to link each individual defendant to a specific fraudulent statement in any meaningful way." (citations omitted)). The same applies in situations where the allegations group together a defendant and a third party. *See, e.g.*, *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 13-CV-2107, 2014 WL 2510809, at *5 (S.D.N.Y. May 28, 2014) (noting that the particularity requirements of Rule 9(b) apply "at one remove to allegations of fraud committed by third parties." (citation omitted)).

In the case at bar, on Plaintiff's theory of the case two individuals engaged in fraud: Gerry and Robert Mathews. Gerry is a named defendant (the other defendant is MCP, Gerry's company, which has no voice of its own in the drama). Robert is a third party. According to the proposed Amended Complaint, Gerry and Robert both participated in the relevant conversations with Walsh, the intended victim; but Plaintiff makes no effort to particularize which brother said what, and when and where he said it. This does not pass muster under Rule 9(b). *DiVittorio* holds that "fraud

allegations ought to specify the time, place, speaker and content of the alleged misrepresentations." It is Plaintiff's obligation under Rule 9(b) to inform Gerry Mathews (the individual defendant in the action) "of the nature of his alleged participation in the fraud," 822 F.2d at 1247 (as opposed to Robert Mathews, a non-party). To be sure, the Amended Complaint also alleges that Gerry or Robert made statements in each other's presence; and it appears to be Plaintiff's theory that, in the totality of circumstances, one brother is responsible for the words spoken by the other brother, in furtherance of a conspiratorial agreement between them to commit fraud. However that may be, it is apparent that Plaintiff's proposed Amended Complaint must be rejected as futile unless Plaintiff pleads this aspect of the case with greater particularity.

A second consideration has to do with whether Count II of the proposed Amended Complaint, sounding in fraud, is futile because it is duplicative of Count I, a common law contract claim. "[W]here a fraud claim is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citation and internal quotation marks omitted); *see also Wilenta Feed, Inc. v. Arnold Food Co.,* No. 3:04-CV-1090 , 2006 WL 798916, at *2 (D. Conn. Mar. 29, 2006) ("Allegations that a party has been defrauded because of a breach of contract are nothing more than breach of contract allegations." (quotation marks omitted) (citing *Gen. Elec. Capital Corp.*, 94 F. Supp. 2d 190, 202 (D. Conn. 1999))). "However, not every fraud claim is foreclosed in an action also involving a contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). The cause of action alleged in Count Two of the proposed Amended Complaint is in essence one for fraudulent inducement of the loan contract between the parties. In

*Wall*, the Second Circuit said the law "specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced," so that a "misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud." 471 F.3d at 416 (citation and internal quotation marks omitted). "Furthermore," the Court of Appeals added in *Wall*, "a promise to take some future action which is collateral to the contract can be considered a 'misrepresentation' for purposes of a fraud in the inducement cause of action" and "a promise [not contained in the written agreement] made with a preconceived and undisclosed intention of not performing it ... constitutes a misrepresentation for purposes of a fraud in the inducement cause of action." *Id*. (citations and internal quotation marks omitted).

While *Wall* applies New York law, Connecticut law on fraudulent inducement does not appear to differ. *See Wilenta Feed, Inc.,* 2006 WL 798916, at *2. The principles articulated in *Wall* are widely followed. The crucial distinction is between future promises (duplicative of a breach of contract claim) and representations of present fact (supportive of a fraudulent inducement claim if knowingly false when made). *See, e.g., Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) ("Jackson & Nash's declarations that it 'had recently secured a large environmental law client' and 'was in the process of establishing an environmental law department' were not future promises but representations of present fact. . . . [T]hese representations support a claim for fraudulent inducement which is distinct and separable from any contract action." (citation omitted) (citing New York cases)); *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 341 (S.D.N.Y. 2017) ("[F]raudulent inducement which alleges a misrepresentation of a present fact, not a promise of future intent, which is the inducement for the contract does not duplicate the contract claim and is

not barred by the contract. In this case, Ross allegedly misrepresented a present fact—that Oxysure was not actively attempting to manipulate its stock—as well as ma[de] other promises . . . sufficient to support a fraud in the inducement claim against Ross personally." (citation and internal quotation marks omitted)); *Wild Bunch, SA v. Vendian Entm't*, LLC, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017) ("[F]alse statements about a party's present financial condition or current ability to perform, made in order to induce a party to enter into a contract, will support a claim of fraudulent inducement. Such statements are not promissory statements of what will be done in the future, but are instead misrepresentations of a present fact, made to induce the counter-party to enter the contract." (citations omitted and internal quotation marks omitted)); *KCG Americas LLC v. Brazilmed, LLC*, No. 15 -CV-4600, 2016 WL 900396, at *4 (S.D.N.Y. Feb. 26, 2016) ("If, however, a plaintiff pleads misconduct independent from the breach of contract, such that it was induced to enter into a transaction because a defendant misrepresented material facts, then the fraud claim survives even though the same circumstances also give rise to the breach of contract claim." (citation and internal quotation marks omitted)). *Cf. All. Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 167 (D. Conn. 2005) (granting summary judgment as to a fraud claim where there was no evidence that the Defendant knew any representations it made were false at the time they were made, and noting that Plaintiff's evidence "does not show anything more than potential negligence or a breach of contract"); *Wallingford Shopping, L.L.C. v. Lowe's Home Centers, Inc.*, No. 98-CV-8462, 2001 WL 96373, at *14 (S.D.N.Y. Feb. 5, 2001) ("At most, then, Lowe's alleged non-disclosure of information relating to its permitting efforts led [Plaintiff] to continue to act under the terms of the Agreement, on the belief that Lowe's, too, was continuing to perform as it had promised. Such allegations are duplicative of those implicated by [Plaintiff's] breach of contract claim and are not cognizable as

fraud under Connecticut law.").

Count Two of the Amended Complaint Plaintiff proposes to file against Gerry Matthews and MCP (the fraudulent inducement claim) contains allegations of a number of statements involving Gerry and/or Robert (*insufficient* allegations under Rule 9(b), as noted *supra*). Some statements fall on the "future promise" side of the dividing line, and cannot support a claim for fraud independent of Count One for breach of contract. An example is ¶ 22, which alleges that Gerry promised Walsh he would pay any shortfall in repayment of the loaned funds if other sources proved insufficient. However, ¶¶ 12-14 contain representations of presently existing fact – specifically, that sales of Nantucket and Waterbury properties owned by the Matthews brothers were imminent "and that accordingly, the Wired Funds [the funds loaned by Plaintiff] would be repaid to Plaintiff in the short-term." ¶ 13. Count II alleges sufficiently that these representations of imminent sale were false when made; Gerry knew they were false; they were made to induce Plaintiff to lend the funds in question to Gerry and MCP; and Plaintiff, relying upon those representations, loaned the funds which have not been repaid.

Under the cited cases, those particular allegations concern matters collateral to the loan contract between the parties which, if proven at trial, would establish a viable claim for fraudulent inducement of the loan contract by Gerry Matthews. Accordingly, Count Two is not a "futile" claim within the context of Rule 15(a); neither is Count Three, for aiding and abetting fraud.[4]

---

[4] Under Connecticut law, to state a plausible claim for common law aiding and abetting, the Plaintiff must allege facts sufficient to satisfy the following elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 334 (2014) (quotation marks, citation and alterations omitted).

## VI. CONCLUSION

The proper resolution to make of the Plaintiff's present motion to amend its Complaint is as follows:

1. Plaintiff's motion [Doc. 55] to amend its Complaint in the form submitted with the motion is DENIED.

2. The Court GRANTS LEAVE to Plaintiff, if so advised, to file a renewed motion under Rule 15(a) for an Order by the Court permitting the filing of a Second Amended Complaint, in a form submitted with the renewed motion and consistent with this Ruling.[5] Such a motion must be filed not later than December 28, 2017. It must be accompanied by a brief in support of the proposed amendment.

3. If Plaintiff files the renewed motion contemplated by Paragraph 2 of this Order, Defendants must signify in writing their consent to the proposed filing of the Second Amended Complaint, or submit papers in opposition to the proposed amendment, within the time specified by the local rules of practice.

4. The Court hereby STAYS the remaining deadlines in this matter pending resolution of Plaintiff's renewed motion, if filed. If no renewed motion is filed, the Court will enter an appropriate Scheduling Order that provides an updated deadline for the filing of dispositive motions and a trial

---

[5] The practice in this Circuit is to allow one repleading in cases where a complaint alleging a claim for fraud is dismissed for lack of Rule 9(b) particularity.

ready date.⁶

    **It is SO ORDERED.**

Dated:        New Haven, Connecticut
                 December 4, 2017

                                   */s/ Charles S. Haight Jr.*
                                   **Charles S. Haight, Jr.**
                                   **Senior United States District Judge**

---

⁶ While this Ruling was in preparation, Defendants filed an answer and affirmative defenses [Doc. 63] to the proposed Amended Complaint, which this Ruling declines to grant leave to file. In that circumstance, the answer will not be docketed and the case will await further developments consistent with the Ruling.