# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES REGIONAL ECONOMIC DEVELOPMENT AUTHORITY, LLC,<br><br>Plaintiff,<br>v.<br><br>GERRY D. MATTHEWS and MATTHEWS COMMERCIAL PROPERTIES, LLC,<br><br>Defendants. | 3:16-cv-01093 (CSH)<br><br><br><br>MARCH 21, 2018 |

## RULING ON PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT

**HAIGHT,** Senior District Judge:

Plaintiff United States Regional Economic Development Authority, LLC ("Plaintiff") makes a motion for leave to amend its complaint. [Doc. 72]. Given the timing of the litigation, Plaintiff was required to obtain leave of the court to file a proposed first amended complaint ("FAC"). I denied leave to file that proposed pleading in an opinion reported at *United States Regional Economic Development Authority, LLC v. Matthews*, No. 3:16-CV-01093(CSH), 2017 WL 5992384, at *1 (D. Conn. Dec. 4, 2017) ("the December Opinion"). Familiarity with that opinion is assumed.

Plaintiff now seeks leave to file the proposed second amended complaint ("SAC"). Defendants Gerry D. Matthews and Matthews Commercial Properties, LLC (collectively "Defendants") oppose the motion. Notwithstanding Defendants' argument to the contrary, the Plaintiff's proposed second amended complaint remedies the shortcomings of the proposed first amended complaint. The Court will grant Plaintiff leave to file the proposed second amended complaint.

1

# I. BACKGROUND

It is sufficient for present purposes to say that Plaintiff sought in the FAC to assert two claims sounding in fraud against Gerry Matthews, the individual Defendant, and the corporate Defendant, Matthews Commercial Properties, LLC ("MCP"), which Gerry Matthews owns and controls. Gerry Matthews entered into the underlying transaction with Plaintiff ostensibly for the benefit of Gerry's brother, Robert Matthews.

The Court denied Plaintiff leave to file the FAC because it failed to plead fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Plaintiff's theory of the case is that its officer, Walsh, was fraudulently induced by Gerry Matthews and his brother Robert (a non-party) to cause Plaintiff to wire a loan of $529,843 to MCP which Defendants have never repaid.

Plaintiff alleges that this fraud was accomplished by a series of five knowing and deliberate oral misrepresentations during two meetings occurring on June 23, 2013, attended by Walsh, Gerry Matthews, and Robert Matthews. With respect to the identity of the offending speakers, the FAC alleged only that they were spoken by "Gerry, and Robert in the presence of Gerry," or by "Gerry and Robert." December Opinion, 2017 WL 5992384, at *6. The Court did not grant Plaintiff leave to file the FAC because "Rule 9(b) is not satisfied where the Complaint attributes fraudulent statements to multiple defendants—or in this case, a defendant and a non-party to the lawsuit—without attributing specific statements to each individual."*Id*. at *6 (collecting cases).

# II. DISCUSSION

Plaintiff's proposed SAC describes with materially increased detail the statements made to

Walsh by Gerry Matthews and by Robert Matthews during the two meetings the three men conducted on June 23, 2013, the first at the MCP offices and the second at Gerry's home in Middlebury, Connecticut. According to the SAC's additional allegations, the Matthews brothers treated Walsh to laudatory descriptions of each other's experience and success in the real estate business, with the transparent and ultimately successful objective of persuading Walsh that MCP was a trustworthy recipient of half a million dollars of Plaintiff's money. When the SAC comes to alleging the specific misrepresentations on which the Plaintiff's fraud claim depends, both Gerry and Robert, and each of them, are identified as having uttered those declarations, which in consequence are attributable to each brother individually. *See, e.g.*, SAC ¶ 16 ("During the June 23 Meetings, Robert and Gerry both, separately and falsely, represented to Walsh that the July Funds were needed to" pay certain specified expenses); *Id.* ¶ 18 ("During the June 23 Meetings, Gerry and Robert both, separately and falsely, represented to Walsh" that the sale of certain properties in Nantucket and Waterbury were "imminent" and that accordingly, the funds loaned by Plaintiff to MCP would be repaid "in the short-term"); *Id.* ¶ 19 ("Indeed, Gerry and Robert both separately represented to Walsh" that the imminent sale of the Nantucket property would include a yacht as part of the buyer's consideration, which "was easily saleable and would result in quick repayment to Walsh"). Paragraphs 14, 17, 22, and 23 of the SAC allege statements made to Walsh during these meetings which are ascribed solely to Gerry Matthews. The SAC also contains allegations of circumstances sufficient to support an inference that the statements attributed to Gerry Matthews were fraudulent when made.

With respect to Plaintiff's claims for fraud against Defendant Gerry Matthews, the SAC remedies the lack of particularity that marred the prior pleading. The gravamen of Plaintiff's fraud

claims are that during one or both meetings on June 23, 2013, between Walsh, Gerry Matthews and Robert Matthews, oral false representations and fraudulent promises were made to Walsh upon which Walsh relied in arranging to wire the funds in question to MCP.  The first meeting occurred in Gerry's office and the second in his home.  The FAC was deficient in describing who made the allegedly fraudulent utterances.  That earlier pleading could be read to suggest that Robert did the talking, with Gerry limited to the supporting role of genial and silent host, keeping his guests' wine glasses full.  That impression does not survive a reading of the SAC's heightened and particularized allegations, which ascribe the utterances in question either to Gerry alone or to "Robert and Gerry both, separately and falsely."

Those allegations satisfy Rule 9(b).  It is not necessary, as Defendants seem to suggest, that Plaintiff reproduce exactly the words uttered by one brother or the other, each utterance set out between quotation marks.  Of course, it is not unusual in the conduct of human affairs for a fraudulent utterance to emerge from a company of several possible tortfeasors.  The requirement of Rule 9(b) in such circumstances is described by the leading treatise: "If a claim involves multiple defending parties, a claimant usually may not group all claimed wrongdoers together in a single set of allegations.  Rather, the claimant must make specific and separate allegations against each defendant." 2 James Wm. Moore, *Moore's Federal Practice* § 9.03[1][f] (3d ed. 2010).  In *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987), construing Rule 9(b), the Second Circuit said that "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." (citation omitted). That requirement of specificity is intended to accomplish the first of the

4

three Rule 9(b) goals identified in *DiVittorio*: "providing a defendant fair notice of plaintiff's claim, to enable preparation of defense." *Id.*

While the *Moore* text and a case like *DiVittorio* contemplate a fraud claim being asserted against a group of individual defendants, the pleading principle is equally applicable to the case at bar, where Gerry Matthews is a party defendant and his brother Robert is not. Plaintiff is required to give and Gerry is entitled to receive specific allegations of what Gerry said to further the fraud alleged in the complaint. If Walsh's account of his meetings with the Matthews brothers ascribed misrepresentations to Robert alone, Rule 9(b) requires the complaint to make that clear. *Cf. McCrae Associates, LLC v. Universal Capital Management, Inc.,* 554 F.Supp.2d 249, 255 (D. Conn. 2008) (complaint alleging fraud claim and naming all company officers as defendants "does not provide enough detail about the identity of the speaker," but the pleading passed muster nonetheless: "However, the allegedly fraudulent promises and representations referred to . . . are clearly attributable to Funk and no one else. Therefore, the defendants have sufficiently identified Funk as the individual who made the allegedly fraudulent statements.").

In contrast, the SAC in the case at bar resolves any prior uncertainty about the participation of Gerry Matthews in the alleged fraudulent scheme. The SAC identifies five particular misrepresentations communicated to Walsh, ascribes two of them to Gerry Matthews alone, and alleges that the other three were uttered by "Robert and Gerry both, separately and falsely." If proven, these allegations suffice under Rule 9(b) to visit upon each of the Matthews brothers individual liability for fraud. Judge Meyer reached that conclusion in the closely similar case of *Roberts v. Bennaceur*, No. 3:12-CV-01222(JAM), 2015 WL 1471889 (D. Conn. Mar. 31, 2015), *aff'd*, 658 Fed. App'x 611 (2d Cir. 2016), where the plaintiff, a discharged company executive,

asserted breach of contract and fraud claims against two individuals – Sophien and Imed Bennaceur – who were brothers and managing directors of the company. Judge Meyer entered default judgments on the fraud claims against each brother, on the basis of allegations that included the following:

> Plaintiff further alleges that while he was working at TriPlanet, both Sophien and Imed continued to falsely maintain the same promises regarding plaintiff's ownership interest and anticipated equity payments to induce plaintiff to continue working at TriPlanet, although neither intended to pay him the promised equity payments and both knew that plaintiff's ownership interest had not been formalized. The complaint refers to several dinner meetings in 2011 where the brothers both assured plaintiff that he had met the requisite performance goals and was entitled to the accompanying bonus payments. It also states that, although Sophien and Imed stated that the company had documents on file formalizing plaintiff's ownership interest, they declined to give plaintiff a copy, and plaintiff's own investigation revealed documents that "made clear that [plaintiff's] equity ownership interest had never been formalized." Plaintiff further alleges that, relying on the brothers' promises, he remained at TriPlanet, although the company "never paid [him] the 2010 and 2011 Annual Equity Payouts, and . . . has failed to recognize or acknowledge [plaintiff's] 25% equity ownership interest in the Company."

*Id.* at *20 (citations omitted). Judge Meyer concluded, not surprisingly: "With these allegations, plaintiff has adequately stated a claim for common law fraud." *Id.*

The sufficiency of the individual fraud allegations in *Roberts* is instructive in the case at bar because the cases present essentially the same alleged situation: two brothers participating together in a scheme to defraud; meeting together with the targeted victim; at those meetings, each brother delivering utterances which directly furthered the fraud, or supported the utterances of the other brother having that effect and purpose; all with the requisite knowledge and intent to deceive and defraud. It is impossible to conclude in this case that the allegations in the SAC fail to achieve Rule

9(b)'s goal of informing Gerry Matthews of the nature of the fraud claim Plaintiff asserts against him, so that he may prepare his defense. That is all Rule 9(b) requires.

In addition to Judge Meyer's opinion in *Roberts*, a useful comparison is also provided by Judge Eginton's opinion in *Harris v. Wells*, 757 F.Supp. 171 (D. Conn. 1991), where two individual directors of a failed company moved to dismiss a fraud claim against them on the ground that the claim "lumps all the AroChem directors together and, in doing so fails to give each defendant fair notice of the nature and factual basis of the charges against him as required by Fed.R.Civ.P. 9(b)." 757 F.Supp. at 173. Judge Eginton rejected that argument:

> Generally, a complaint need only apprise a defendant of the "general time period" of any alleged misstatements to meet the requirements of Rule 9(b). Indeed, dates, times and places need not be pleaded with absolute precision, so long as the allegations sufficiently put the defendant on notice as to the circumstances of the charged misrepresentations. The fraud allegations contained in the amended complaint provide an abundance of particularized factual details including dates, times, places and names. These allegations are clearly specific enough to permit Peden and Meister a "reasonable opportunity" to answer.

*Id*. at 173-74 (citations omitted). The SAC at bar, in addition to detailed allegations about "dates, times, and places," *id.*, includes for the first time a full sequence of particularized allegations about *what Gerry Matthews said*. The SAC's additional allegations, that "Robert and Gerry both, separately and falsely" uttered the misrepresentations complained of, conveys Plaintiff's assertion that Robert and Gerry were saying the same things, at the same time, in the same place, to the same audience (Walsh), but does nothing to denigrate or minimize Plaintiff's allegation that *Gerry was saying them*. In consequence, Gerry Matthews is on full and complete notice of the claims of fraud Plaintiff is making against him, and can array his available defenses accordingly.

It is worth noting that Judge Eginton's analysis in *Harris* echoes the requirement in Rule 9(b) that "a party must state with particularity *the circumstances* constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Plaintiff's proposed Second Amended Complaint gives Defendant Gerry Matthews adequate notice of the circumstances charged against him.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's *Motion to File Second Amended Complaint* [Doc. 72] is GRANTED. Plaintiff must serve and file the Second Amended Complaint as a separate entry on the case docket on or before **March 28, 2018**. Defendants are directed to file their answer to that pleading in the time provided by the Federal Rules of Civil Procedure.

**It is SO ORDERED.**

Dated:         New Haven, Connecticut
               March 21, 2018


                         /s/ Charles S. Haight, Jr.
                        CHARLES S. HAIGHT, JR.
                        Senior United States District Judge